IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| SARAH LYNN CORMIER | § | |
| VS. | § | CIVIL ACTION NO. 1:11cv106 |
| UNITED STATES OF AMERICA | § | |

<u>MEMORANDUM OPINION</u>

Sarah Lynn Cormier, an inmate confined within the Bureau of Prisons, proceeding *pro se*, filed this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.

<u>Factual Background</u>

On February 21, 2008, a federal grand jury returned a three-count indictment against movant and five co-defendants. Movant and her co-defendants were charged with: (a) conspiring to commit carjacking; (b) carjacking and aiding and abetting cracking and (c) brandishing a firearm during and in relation to a crime of violence and aiding and abetting the brandishing of a firearm during and in relation to a crime of violence. A four-count superseding indictment added a charge of possessing a firearm after having been convicted of a felony against a co-defendant.

Following a jury trial, movant was convicted of all charges. She was sentenced to a total of 117 months imprisonment. The convictions and sentence were affirmed by the United States Court of Appeals for the Fifth Circuit. *United States v. Rice*, 607 F.3d 133 (5th Cir. 2010).

## Grounds for Review

Movant asserts the following grounds for review: (1) she was denied due process of law because the jury was unable to decide her case fairly; (2) a detective was improperly permitted to testify that he did not believe her story regarding her participation; (3) there was insufficient evidence to support her conviction for aiding and abetting the brandishing of a firearm during and in relation to a crime of violence; (4) the trial court gave an improper jury instruction and (5) there was prosecutorial misconduct because the prosecution: (a) made an improper contingent plea offer; (b) improperly asserted movant's counsel had a conflict of interest and (c) improperly attempted to have movant convince a co-defendant to accept a plea offer. Movant also asserts she received ineffective assistance of counsel because counsel: (1) failed to request a separate trial; (2) failed to make objections at trial and (3) failed to subpoena phone records and domestic violence records.

## Factual Background

In its opinion, the Fifth Circuit summarized the facts surrounding this case as follows:

> One day in December 2007, Cormier and [John] Rice joined Aldrain Booker, Keisha Guidry, Joshua Hayward, and William Stanton in search of people to rob. The group first went to a local bingo hall where Rice and Hayward discussed robbing a woman who had just won the big prize. They all piled into Guidry's car and Rice told Stanton, who was driving, to follow the woman home. When they arrived there, Rice retrieved his gun through the armrest and exited the vehicle. But by the time he reached the house, the garage door was almost closed, so he returned to the car, and the group drove away.

Later that night, Cormier and Rice came up with a plan to order pizza to an abandoned house and then steal the delivery man's pizza, money, and car. Cormier called the pizza restaurant but learned that they did not deliver after 9 p.m.

The group then decided to drive to a grocery store to get something to eat. When they reached the parking lot, Rice spotted an older couple, whom the group followed home. On the way, they discussed wrapping the couple in duct tape and taking their money and car. At the couple's house, Rice and Hayward exited the vehicle and ran toward their targets. As Rice and Hayward approached, the elderly man pulled out his phone and threatened to call the police. Rice and Hayward then retreated to Guidry's car.

Next, the group drove to a convenience store at a gas station where one of Booker's friends, Danial Reynolds, was working. After four members of the group entered the store, Cormier asked Reynolds whether they could rob him and later split the profits. Reynolds seemed to think she was joking and disregarded the proposal.

Finally, only a few minutes later, Amanda Weeks approached the gas station in her car, and Rice ordered Stanton to park across the street so they could observe Weeks. After Weeks used her debit card to pay for gas, Rice told Stanton to follow her home so they could steal her money and car. While the car followed Weeks, Rice once again retrieved his gun from behind the armrest.

When Weeks arrived at her residence and opened her car door, she saw a man, later identified as Rice, walk up and point a gun at her head. He told her to get into the passenger seat, then shoved her into it. Rice drove Weeks to a nearby ATM and ordered her to switch seats and withdraw as much money as possible. He also told her not to do anything stupid and the he had "done this before." Weeks withdrew $200 and gave it to Rice.

Rice drove to a nearby credit union and told Weeks that he was keeping her car to wipe off fingerprints. He ordered her out of the car, told her to lie on the ground until he left, and drove away.

Throughout the incident, Stanton, Cormier, Booker, Hayward, and Guidry followed Rice and Weeks in Guidry's car. After Rice dropped off Weeks, the rest of the group stopped in front of him at an underpass. Rice gave Cormier $20, and Booker got in Weeks's car with Rice. They proceeded to take her car to an abandoned house, where the group stole

3

various items from the car and wiped off the fingerprints. When they returned to Guidry's trailer, Rice took the gun inside, and Booker hid it under the sofa cushions.

After reviewing videotape from the gas station, police officers went to Guidry's trailer. When they entered, one officer observed Rice and Hayward pushing down into the couch cushions. He ordered them to stand up, and the other officers soon discovered the gun used to rob Weeks the night before.

Booker, Guidry, and Stanton gave written statements to the police regarding their involvement in the incident. They all indicated that Rice held the gun to Weeks's head and took her car and money. Cormier stated that she remembered visiting the gas station with the others but got tired of waiting and slept through the entire incident.

## Analysis

There are four separate grounds upon which a federal prisoner may move to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; and (4) the sentence is "otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).

"Challenging a conviction and sentence with a section 2255 motion is 'fundamentally different from a direct appeal.'" *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (quoting *United States v. Dorbny*, 955 F.2d 990, 994 (5th Cir. 1992)). Following conviction and exhaustion or waiver of any right to appeal, a criminal defendant is presumed to stand fairly and finally convicted. *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (*en banc*) (1992). "Thus, on collateral attack, a defendant

4

is limited to alleging errors of a 'constitutional or jurisdictional magnitude." *Samuels*, 59 F.3d at 528 (quoting *Shaid*, 937 F.2d at 232). Relief under Section 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

*Grounds for Review Raised on Direct Appeal*

In grounds for review 2 and 5(a), movant asserts a detective was improperly permitted to express his opinion as to her truthfulness and that the prosecution made an improper contingent plea offer. Movant raised these grounds for review on direct appeal. In rejecting ground for review 2, the Fifth Circuit stated as follows:

> As an initial matter, the record indicates that Baise's response was not an attempt to offer his opinion of Cormier's truthfulness. Instead, it seems he was merely explaining why he had advised her to get an attorney. Cormier did not maintain at trial that she slept through the carjacking and therefore the prosecutor had no need to undermine her previous account of the event. Understood in proper context, the challenged comment was not opinion testimony, and its admission did not mandate a mistrial.

In rejecting ground for review 5(a), the Fifth Circuit stated:

> Cormier claims that the government engaged in prosecutorial misconduct by offering her a plea deal contingent on Rice's joint plea. Cormier expressed a willingness to accept the deal, but Rice refused to plead guilty. The prosecutor declined to offer Cormier the same terms for an individual plea, and the case went to trial. Although she made no objection in the district court, she now claims that the government's offer of a joint plea bargain violated due process.

5

> It is well established that there is no constitutional right to plea bargain. It follows that defendants do not have a right to plea bargain individually. Cormier offers no reason why the government should be prohibited from conditioning a plea offer on a joint plea, and she had no right to accept only her portion of the government's offer.

Issues decided adversely on direct appeal may not be reasserted in a motion to vacate. *United States v. McCollum*, 664 F.2d 56 (5th Cir. 1981); *Buckelew v. United States*, 575 F.2d 515 (5th Cir. 1978). "Section 2255 may not be used to secure a second direct appeal .... [A ground for review] may not be resurrected and urged anew; it is a thing adjudged and definitively resolved" once disposed of on direct appeal. *McCollum*, 664 F.2d at 59. As the Fifth Circuit rejected these grounds for review on direct appeal, movant may not reassert them in the current proceeding.

*Grounds for Review That Could Have Been Raised on Direct Appeal*

Where a movant failed to raise a ground for review on direct appeal, that issue is procedurally barred from consideration in a proceeding brought pursuant to Section 2255. *United States v. Lopez*, 248 F.3d 427 (5th Cir. 2001); *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000). A district court may consider a defaulted claim only if the movant can demonstrate either (1) cause for her default and actual prejudice. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). To satisfy the "cause" standard, a movant must show that "some objective factor external to the defense" prevented her from raising the ground for review on direct apepal. *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996).

6

"Actual prejudice" exists when the errors alleged by a movant "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 171 (1982). The only recognized exception to this rule is in an "extraordinary case" where "a constitutional violation has probably resulted in the conviction of one who is actually innocent ...." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Grounds for review 1, 3, 4, 5(b) and 5(c) could have been raised on direct review, but were not. Movant has not shown cause for failing to raise them on direct appeal or demonstrated "actual prejudice." Nor has she shown she is actually innocent. As a result, these grounds for review are procedurally barred from consideration in this proceeding.

*Remaining Grounds for Review*

Movant also identifies three instances where she believes she received ineffective assistance of counsel

A. <u>Legal Standard for Ineffective Assistance of Counsel</u>

In order to establish ineffective assistance of counsel, a movant must establish counsel's performance was deficient, and that the deficient performance prejudiced the movant's defense in ths matter. *Strickland v. Washington*, 466 U.S. 668, 689-92 (1984). As a movant must prove both deficient performance on the part of counsel and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995). To overcome the presumption that counsel rendered reasonable,

7

professional assistance, a movant must prove his attorney's performance was objectively unreasonable in light of the facts of the movant's case, viewed as of the time of the attorney's conduct. *Strickland*, 466 U.S. at 689-90.

In addition to proving counsel's performance was deficient, a movant is required to show prejudice resulting from counsel's inadequate performance. *Strickland*, 466 U.S. at 691-92. Movant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 694. Mere allegations of prejudice are insufficient; a movant must affirmatively prove, by a preponderance of the evidence, that she was prejudiced as a result of counsel's deficient performance. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

B. Application

1. Failure to Request Separate Trial

Initially, movant asserts counsel was ineffective for not requesting that she be tried separately from Mr. Rice. She states that the fact that the jury found both her and Mr. Rice guilty on each combined count supports the conclusion that the jury could not make an individualized determination with respect to each defendant.

Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment ... appears to prejudice a defendant ... the court may order separate trials of

counts, sever the defendants' trials, or provide any other relief that justice requires." The Supreme Court has held that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Id*. at 538. This is especially true in conspiracy cases. *United States v. Valdez*, 453 F.3d 252, 261 (5th Cir. 2006). A defendant requesting severance bears "the difficult burden of proving that he will suffer the most compelling prejudice from continued joinder; a mere showing of some prejudice is insufficient." *United States v. Zicree*, 605 F.2d 1381, 1388-89 (1979).

In light of the preference for joint trials, particularly in conspiracy cases, and as movant has failed to show being tried with her co-defendant caused her "compelling prejudice," it is highly unlikely a motion for separate trials would have been granted if a motion had been filed. As a result, counsel's failure to file such a motion did not fall below an objective standard of reasonableness. Moreover, movant's conclusory statement that the jury was unable to make an individualized determination as to each defendant is insufficient to establish there is a reasonable probability she would have been acquitted if she had been tried separately. This ground for review is therefore without merit.

9

2. <u>Failure to Make Objections</u>

Movant also asserts counsel was ineffective for failing to make an objection at a certain point in the trial. She states counsel failed to object to testimony by the victim that was inconsistent with a prior statement she made to police. She states that the victim told police that the hoody worn by Mr. Rice had a brown body with a gold embroidered animal print. However, at trial, the victim stated the hoody was black with silver lettering.

At trial, the victim testified that the man who pointed the gun at her head was wearing a dark hoody with something on the front. On cross-examination, Mr. Rice, who acted as his own attorney, asked her what she meant by a dark hoody and whether she meant dark brown, black or blue. The victim said that it could have been any one of those colors. Mr. Rice then had the victim read from her statement to police in which she described the hoody as being dark-colored, possibly brown. The statement also said that the hoody had some sort of design or writing on the chest and that there was some sort of embroidery on the edge of the hoody like gold trim.

When movant states counsel should have objected to the victim's testimony regarding the color of the hoody worn by Mr. Rice, she appears to actually be complaining about counsel's failure to impeach her trial testimony regarding the color of the hoody with what movant believes is a prior inconsistent statement.

After reviewing the victim's trial testimony and her statement to police, the court is of the opinion that it is doubtful that her

trial testimony regarding the description of the hoody was inconsistent with her prior statement. Further, even if it could be concluded that the descriptions of the hoody were inconsistent, Mr. Rice asked questions designed to bring this to the jury's attention during his cross-examination of the victim. As a result, there was no need for movant's counsel to ask the same questions. Counsel's representation on this point therefore did not fall below an objective standard of reasonableness and there is not a reasonable probability the result of the proceeding would have been different if counsel had repeated the questions asked by Mr. Rice.

    3. <u>Failure to Subpoena Telephone Records and Domestic Violence Records</u>

Finally, movant asserts counsel failed to subpoena her phone records. She states the records would have demonstrated she did not make a telephone call the government asserted she had made. She also stated that domestic violence records from Port Arthur and Orange County would have established she was acting under duress at the time of the carjacking.

At trial, Aldrain Booker, a co-defendant, testified that movant was the one who called the pizza restaurant after the group found an abandoned house. During her testimony, movant denied making the phone call and stated Mr. Rice had "busted" her nose in Orange. During cross-examination, movant acknowledged that she could have asked to get out of the car during the evening and that nobody threatened her in the car to prevent her from leaving. In addition, movant's mother testified that on one occasion in Orange,

11

Mr. Rice had struck movant in the nose and nearly broken her nose.

Even if it is assumed movant did not make the phone call described by Mr. Booker, and that her phone records would have established this, it cannot be concluded movant suffered prejudice because a subpoena was not issued for the phone records. In light of the additional evidence described in the Fifth Circuit's opinion regarding movant's participation in the offenses, it cannot be concluded there is a reasonable probability movant would have been acquitted of one or more of the charges against her even if the testimony regarding her making the phone call described by Mr. Booker had been thoroughly discredited.

With respect to the domestic violence records, the government made no attempt to impeach testimony offered by movant that she had been struck by Mr. Rice on prior occasions. Instead, the government elicited testimony from movant that on the night in questioned she was not threatened and could have asked to leave the vehicle. As domestic violence records would have supported testimony that was not challenged by the government and would have, at most, implicitly called into question whether movant could have asked to leave the vehicle during the night of the carjacking, there is not a reasonable probability the result of the proceeding would have been different if domestic violence records had been subpoenaed and contained evidence favorable to movant.

## Conclusion

For the reasons set forth above, this motion to vacate, set aside or correct sentence is without merit. A final judgment shall

be entered denying the motion to vacate.

In addition, the court is of the opinion movant is not entitled to a certificate of appealability. An appeal from a judgment denying post-conviction collateral relief may not proceed unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253. The standard for a certificate of appealability requires the movant to make a substantial showing of the denial of a federal constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Elizalde v. Dretke*, 362 F.3d 323, 328 (5th Cir. 2004). To make a substantial showing, the movant need not establish that he would prevail on the merits. Rather, he must demonstrate that the issues are subject to debate among jurists of reasons, that a court could resolve the issues in a different manner, or that the questions presented are worth of encouragement to proceed further. *See Slack*, 529 U.S. at 483-84. If the motion to vacate was dismissed on procedural grounds, the movant must show that jurists of reason would find it debatable: (1) whether the motion to vacate raises a valid claim of the denial of a constitutional right and (2) whether the district court was correct in its procedural ruling. *Id*. at 484; *Elizalde*, 362 F.3d at 328. Any doubt regarding whether to grant a certificate of appealability should be resolved in favor of the movant, and the severity of the penalty may be considered in making this determination. *See Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000).

In this case, the movant has not shown that any of the issues

raised in the motion to vacate are subject to debate among jurists of reason or could be resolved in a different manner.  Nor has he shown that the issues raised are worthy of encouragement to proceed further.  As a result, a certificate of appealabiltiy shall not issue in this matter.

    **SIGNED** this the **24** day of **March, 2014.**

_____
Thad Heartfield
United States District Judge